McFarland, J.,
delivered the opinion of the court.
These two petitions for writs of mandamus involve the same questions substantially, and were heard together by Judge Baxter in the Circuit Court of Davidson County, and peremptory writs .were granted.
From this judgment, the defendant has appealed.
Albert Akers, Clerk of the Circuit Court of Davidson County, applied to the Comptroller for a warrant upon the treasury for the amount of fees claimed by the former for services rendered in proceedings in *608 the name of the State for condemnation of the lands reported by the revenue collector of said county for unpaid taxes for the year 1871.
The Union and American Publishing Company applied for a warrant for the printer’s fees in the same cases.
The warrants were refused.
Various questions were raised by a demurrer of the Comptroller to a petition, and a demurrer of petitioners to the answer of the Comptroller.
The law requires the collector to report to the circuit court the lands whereon the taxes are unpaid, there being no goods of the owners to destrain, — the report to be made at the first term of the succeeding year, or any subsequent term. Code, sec. 612.
We have recently held, in the case of Chadwell v. State, 8 Heis., 340, that the collector is required to make his report to the first term of the succeeding year, if the books came to his hands at the time required by law; otherwise, within a corresponding time afterward; and that if he fail to do so, he and his sureties are liable to judgment by motion.
The form of the report for judgment of condemnation and order of sale is given.
The collector is, by law, under the order of sale, required to sell the lands on a certain day, viz., the first Monday of July, at the court house door. Code, sec. 619, — changed now as to the time of sale.
Sec. 622 enacts that if no person will bid the amount of taxes, costs, and charges, the collector shall bid off the land in the name of the Treasurer as Su *609 perintendent of Public Instruction, for the use of common schools, in which case the fees shall be paid to the officers by the Treasurer out of the common school fund, on the warrant of the Comptroller.
It is under this section that the relief is claimed.
It is alleged that the lands were duly reported by the collector, and were condemned, sold, and bid off by him in the name of the Treasurer, etc.
The fees claimed are upon cases falling within this category.
The first question made is, that the lands were not duly reported and condemned.
The collector did not in fact make his report within the time required by law, but in other respects it was valid.
We held in the case referred to, which was the case of the present collector, that this failure rendered the collector and his sureties liable to judgment by motion; and we gave judgment accordingly for the default now in question; but we are clearly of opinion that the judgment of condemnation is not for this reason void, but on the contrary that it is as entirely valid and effective as if it had been made at the proper time.
It is next argued that after the failure of the collector to report the land at the proper time, whei'eby he and his sureties became liable, a condemnation and sale in the name of the State is only for the benefit of the collector and his sureties, and for their indemnity, and that the officers of the court must look to them for their fees.
*610 We think that this result does not, follow.
If there be a judgment against the collector and his sureties, and this judgment is satisfied, then the collector and his sureties would no doubt be substituted to the rights of the State against the tax payer and his property; but the rights of the State do not pass to the collector for this purpose until the judgment is satisfied.
The State may claim both remedies until satisfaction is obtained.
The fees in question were not included in the judgment heretofore rendered against the collector and his sureties, and the collection of this judgment alone would not place in the hands of the Treasurer the proper funds to pay these costs; but the collector, if he pays the judgment, and afterward collects the taxes and fees, would still hold the fees for the officers of the court; or, if the State had previously paid them, then for the State.
So we hold that the condemnation in the present cases was for the benefit of the State, although the report of the collector was made after, by his failure to report in time, he had made himself and his sureties liable to judgment by motion.
But the clerk was not entitled to a warrant for these fees at once, upon the rendition of the services. Upon this idea he would have the right to sue a litigant in court for his fees as soon as his services were rendered.
Upon these lands being sold for cash by the col *611 lector, he was bound to pay the clerk his fees out •of the money received.
It is only as to the lands bid off by the collector in the name of the Treasurer, that the clerk and the printer are entitled' to a warrant on the Treasurer for their fees: until this takes place, the rights of the officers to demand warrants under this section of the Code does not arise.
It must appear in the cases where the fees are Remanded that the lands have been sold and bid off by the Treasurer, etc.
The answer of the Comptroller denies ’ that this appears here.
He admits that the lands have in fact been sold and bid off by the ’ collector in the name of the Treasurer, etc., but he insists that the sale is void, and that the State is not bound thereby.
The facts are, that the collector did not continue the sale from day to day from the first Monday of July, as the law requires, but postponed the sale to subsequent days, at which times he bid off the lands in the name of the Treasurer.
It is maintained that he had no authority to do this, and that the sales are void.
It is argued with much force, that if these sales were void it is as if they had never been made at all, in which case the contingency upon which these warrants are to issue has not arisen.
This doctrine, , however, would result in requiring the clerk to show, not only that the lands have been bid off in the name of the Treasurer, but also that *612 the sales were legally valid, and are not liable to be declared void for any reason.
This would involve a judicial examination of the question, which we think is not properly to be determined in this mode.
Ve conclude, therefore, that the fact of an actual sale and purchase in the name of the Treasurer is sufficient; and we hold thus the more readily as these claims do not depend upon the validity of the sales.
The officers were required to render services in proceedings conducted in the name of the State, and their right to compensation ought not to depend upon whether other officers have performed their duties.
This is only important as fixing the time and mode in which the payment is to be made.
The next point that is raised is, that the clerk has failed to make his statement to the Comptroller, as required by Code, sec. 634, and that this is a prerequisite to the issue of the warrants, as furnishing the evidence upon which the Comptroller is to act.
This section enacts: “When the collector has returned the order of sale the clerk shall make and certify to the- Comptroller and county trustee a statement showing the amount of taxes paid on said lands, town lots, and parts of town lots, that have been sold, the names of the owners- or claimants of all such lands or town lots, and parts of town lots, with description and value thereof, and amount of taxes due thereon, as have been returned unsold, and the taxes unpaid.”
The next section provides that the Comptroller *613 shall direct the manner in which they shall be thereafter assessed, etc.
This is the only statement that the clerk is required to make, so far as we see; and it does not embrace in terms those lands that have been bid off in the name of the Treasurer, nor does its object seem to have been to furnish the Comptroller with evidence for any purpose in regard thereto.
It is not clear what is meant by lands “returned unsold,” as section 622 requires the collector to bid the lands off in the name of the Treasurer, if no one else bids.
We think that this statement is not a prerequisite to establish the right of the petitioners.
We do not understand the Comptroller to contest the amounts claimed, provided the legal questions are settled against him.
' Of course, the Comptroller had the right, and it was his duty, to require the evidence of the facts upon which these claims arise to be produced to his satisfaction, and to be filed in his office; but it was not essential that the claims should appear from records already in his office.
It was his duty to audit and settle the accounts or claims.
It is next argued that the law requires these warrants to be issued against the school fund, and that this demand was made for warrants on the Treasurer generally.
The law specifies the fund out of which the warrants are to be paid, and the warrants and their pay *614 ment should follow the direction of the statute; but if there is no such fund in the hands of the Treasurer, it does not follow that the Comptroller is not bound to issue the warrants.
The parties are entitled to their warrants; their payment is with the Treasurer.
Upon the whole, we think that the petitioners are entitled to have warrants issued to them, and that it is the duty of the Comptroller to do so.